Fridley v. Bowen.

## Benjamin F. Fridley, Impl'd,
### v.
## Edwin A. Bowen et al.

Mortgage—Foreclosure—Payment.—The decision of this case turns upon questions of fact. The court finds from the testimony that the note and mortgage in question were given to secure the payment of pre-existing indebtedness of the mortgagor to the bank, and that prior to the filing of the bill of complaint such indebtedness had been fully paid and the evidence therefor surrendered to the mortgagor; that as to one item of such indebtedness, it had been from time to time renewed, but from the custom of the bank in making such renewals—by a new loan, and payment of the old note out of the new loan—the original indebtedness had been paid.

Appeal from the Superior Court of Cook county.; the Hon. S. M. Moore, Judge, presiding. Opinion filed February 4, 1880.

Mr. R. G. Montony, for appellant; that where a note is taken for an antecedent debt, it will be presumed to have been taken in satisfaction of it, unless shown to have been intended as collateral security, cited White v. Jones, 38 Ill. 160. ·

The court should have found the note and mortgage paid, and dismissed the bill for that reason: Emery v. Kighan,. 88 Ill. 483.

Fraud vitiates all contracts: Jamison v. Beaubien, 3 Scam. 113; Prevo v. Walters, 4 Scam. 35; 2 Story's Eq. § 1502.

Where both parties claim by equitable title, he who is prior in time has the better right: Boone v. Chiles, 10 Pet. 210; Anderson v. Roberts, 18 Johns. 532.

A *bona fide* purchaser must claim his advantage by way of defense: Beckman v. Frost, 18 Johns. 543; Boone v. Chiles, 10

Pet. 210; Peterson v. Dughle, Ambler, 192; Daniell's Ch. Pr. 674; Brown v. Welch, 18 Ill. 343.

Under the claim of a *bona fide* purchase, the consideration must not be an antecedent debt: Met. Bank v. Godfrey, 23 Ill. 604; Manning v. McClure, 36 Ill. 490.

Fridley's possession was notice of every claim which he might legally assert: Met. Bank v. Godfrey, 23 Ill. 604; Smith v. Heirs of Jackson, 76 Ill. 254.

A national bank cannot take a mortgage to secure a previous indebtedness to its president or to any other than the bank itself; the power must be exercised in conformity with the statutes: Met. Bank v. Godfrey, 23 Ill. 604; Fridley v. Bowen, 87 Ill. 157; People v. Supervisors, 4 Hill, 20; Gillett v. Moody, 3 Comst. 479; Head v. Providence Ins. Co. 2 Cranch, 50; Dartmouth Coll. v. Woodward, 4 Wheat. 636; Safford v. Wyckoff, 4 Hill, 443; Talmage v. Pell, 3 Seld. 340.

Mr. F. J. CRAWFORD and Mr. L. B. CROOKER, for appellees; that in considering a case in chancery on appeal, this court will consider only proper evidence, cited Pratt v. Pratt, 12 Chicago Legal News, 95.

The defendant is bound to apprise a plaintiff by his answer of his defense: Home Ins. and Banking Co. v. Meyer, 1 Syn. Rep. 220; 1 Daniell's Ch. Pr. 712.

He cannot avail himself of a defense not set up in his answer: Stanley v. Robinson, 1 Russ. & Myl. 527; Warren v. Warren, 30 Vt. 530; Burnham v. Dalling, 17 N. J. 134; Moors v. Moors, 17 N. H. 481; Woods v. Morrell, 1 John. Ch. 103; Harrison v. Borwell, 10 Sim. 382; Story's Eq. Pl. § 855.

As to the rights of a *bona fide* purchaser, and that a mortgagee taking a mortgage in good faith for a pre-existing debt is a purchaser: Robinson v. Rowan, 2 Scam. 499; Babcock v. Jordan, 24 Ind. 24; Work v. Brayton, 5 Ind. 396; Butters v. Haughwort, 42 Ill. 18.

The same rule applies to the purchaser of negotiable securities: Russell v. Hadduck, 3 Gilm. 233; Manning v. McClure, 36 Ill. 490; Doolittle v. Cook, 75 Ill. 354.

The circumstances under which the mortgage was given raise

a strong equity in favor of the bank: First Nat. Bank v. Haire, 36 Iowa, 447; Burch v. Hubbard, 48 Ill. 164.

If one of two innocent parties must suffer, he who enabled another to commit the wrong must bear the loss:   Gavagan v· Bryant, 83 Ill. 376.

A purchaser without notice of an equity is not affected by it: Moore v. Hunter, 1 Gilm. 317; Stampofski v. Hooper, 86 Ill. 321.

As to rule of application of payments:   Hare v. Stegall, 60 Ill. 380.

Personally property attached to the estate should be sold as part of the estate mortgaged: Wood v. Wheeler, 1 Syn. Rep. 312.

WILSON, J.   On the eleventh day of December, 1876, ap‐ pellee, Edwin A. Bowen, filed his bill in chancery in the Supe‐ rion Court of Cook County, to foreclose a mortgage executed by Edmund D. Taylor, and his wife, Margaret Taylor, to secure Taylor's note to Bowen of that date for $10,000, payable one year after date at the First National Bank of Mendota, with interest at ten per cent. per annum.   The bill alleges that Taylor was the owner in fee of the premises described in the mortgage, namely: the north nine feet of the west $112\frac{1}{4}$ feet of lot 10, and the south eleven feet of the west $112\frac{1}{4}$ feet of lot eleven, in Whitbeck's subdivision of the west half of Sec. 27, T. 39, N. R. 14, east of the 3d P. M., consisting of a dwelling house, barn, and the furnace, carpets and gas fixtures then in use in the house; the premises being known as No. 906 Mich‐ igan avenue, in the city of Chicago.   The bill alleges that Ben‐ jamin F. Fridley, Alvin A. Patton and Edward H. Burdsall claim to have some interest in the premises, and makes them parties defendant with Taylor and wife.

The proceedings resulted in a decree of foreclosure, which was subsequently reversed by the Supreme Court, and the cause was remanded to the Superior Court for further proceedings. Fridley v. Bowen, 87 Ill. 157.

On the 16th day of September, 1878, Bowen and the First National Bank of Mendota filed an amended bill, in which they set forth that previous to the giving of the note and mort‐

gage, Taylor had become indebted to the bank in the course of dealings between him and the bank, and that in consideration of such indebtedness, Taylor executed the note and mortgage in question, to secure ten thousand dollars of such indebtedness; that Bowen was the President of the bank, and that the note and mortgage were given for the use and benefit of the bank, and are held in trust therefor, and that the note is wholly unpaid. In other respects, the allegations of the amended bill are similar to those contained in the original bill.

All the defendants were defaulted except Fridley, who filed his answer setting forth, in substance, that on the 12th day of March, 1875, he was the owner in fee of the premises described in the mortgage, and that on that day he was induced to sell and convey, and did execute to Taylor a proper deed of conveyance therefor, in exchange for eighty thousand dollars of the capital stock of the Northern Illinois Coal and Iron Company of LaSalle, of which company Taylor was the President and the principal owner of its stock; that he was induced to make the exchange by the representations of Taylor that the company was in a flourishing condition and its stock very valuable; that it would soon go to par and pay large dividends; that soon thereafter he learned that Taylor's representations were false; that the company was insolvent and its stock valueless; that about the 15th day of April, 1875, he demanded of Taylor a re-conveyance of the property, and offered to return the stock; that Taylor promised to re-convey, and afterwards, on the 9th day of December, 1875, Taylor and his wife, in fulfillment of Taylor's promise, re-conveyed the property to Fridley; that at the time Fridley demanded of Taylor a re-conveyance in April, Taylor informed him that he had borrowed $10,000 of the Mendota bank and had given a mortgage on the property to secure the same, which he promised to have removed.

The answer alleges that Fridley was in possession of the property at the time of his conveyance thereof to Taylor, and that he has ever since remained in possession of the same, and charges that his possession was notice to Bowen and the bank, as mortgagees, of his equitable right in the property. The an-

swer further alleges that the note and mortgage were taken by the bank for a loan of money, and was in violation of the provisions of the act of Congress prohibiting national banks from loaning money on real estate security, and was therefore null and void. The answer concludes with a general denial of all matters alleged in the bill not otherwise answered, confessed or denied.

Replications were filed, proofs heard and a decree rendered in favor of complainant for $10,656.90, with the usual order of sale. Fridley brings the case to this court by appeal, and assigns for error among others, that the court erred in finding that there was due to complainant $10,656.90, or any part thereof. In the view we take of the case, this is the only error assigned we deem it necessary to consider.

We shall not enter into any analysis of the evidence in detail, portions of which are, to say the least, confused and obscure, and in some instances difficult of reconciliation with other portions ; but after a careful examination of the testimony of Bowen and Taylor, the two principal witnesses sworn in the case, we think it sufficiently appears that the indebtedness represented by the note and mortgage was paid before the filing of the bill. It appears from the proofs that for some time prior to March 25th, 1875, the First National Bank of Mendota, had been in the habit of discounting E. D. Taylor's notes, and also drafts of the Illinois Coal and Iron Company, on various railroad companies for coal supplies, the drafts being endorsed by Taylor. The indebtedness of Taylor to the bank, as maker and endorser of these notes and drafts, amounted to $17,000 at the time the note and mortgage in question were executed, and was made up of the following items :

1. Note of E. D. Taylor, dated Dec. 30, 1874, $4,000.

2. Note of E. D. and C. F. Taylor, dated Feb. 15, 1875. $1,500.

3. Note of Northern Illinois Coal and Iron Company, endorsed by E. D. Taylor, dated Jan'y 8th, 1875, $3,000.

4. Draft of W. W. Taylor, Treasurer Northern Illinois Coal and Iron Company, on C. H. Harris, Rec'v'r C. D. & M. R. R. Co., dated March 13th, 1875, $2,000.

5. Draft of W. W. Taylor, Treasurer Northern Illinois Coal and Iron Company, on W. H. Purdy, Treasurer Chi. R. I. & Pac. R. R. Co., dated March 13th, 1875, $2,000.

6. Draft of W. W. Taylor, Treasurer Northern Illinois Coal and Iron Company, on C. W. Ackerman, Assistant Treasurer Ill. Cent. R. R. Co., dated March 13th, 1875, $4,500.

Total, $17,000. The drafts were all endorsed by E. D. Taylor.

Some days prior to the giving of the ten thousand dollar note and mortgage in question, Taylor had applied to the bank for a loan of $8,440, with which to pay the interest on the bonded debt of the Coal and Iron Company, then past due. His application was refused, and he was told that neither he nor the Coal and Iron Company could have any further accommodations unless he reduced his existing indebtedness, or gave something to secure it. About a week afterwards he came to the bank and exhibited a deed to himself from Fridley for the Chicago property; Bowen thereupon prepared the note and mortgage for ten thousand dollars, which Taylor and wife executed, and the bank deeming Taylor's personal credit improved, discounted his note for $8,440. The mortgage was not made to secure this last note, and had no relation to it, except in so far as it improved Taylor's credit, and enabled him to procure new accommodation on his personal security.

In respect to the second and third items of Taylor's indebtedness above specified, being the note of E. D. and C. F. Taylor for $1,500, and the note of the Coal and Iron Company for $3,000, it is not disputed that they were paid, or if disputed, the evidence clearly establishes the fact of such payment. As to the first item, the note of E. D. Taylor for $4,000, dated Dec. 30, 1874, Bowen testifies that it was surrendered and given up to Taylor on renewal; that it was renewed seven or eight times, down to July 1876, and that he holds a note for $4,711, which is but a renewal of the indebtedness represented by the original note.

In other parts of his testimony he swears that the bank made

no renewals; that when a note matured it was never renewed, but if the party desired further accommodations, a new loan was made, and the old note was paid out of the proceeds of the new loan. The books of the bank showed no renewals, but only discounts and payments, the old notes not being retained by the bank, but were surrendered to Taylor on being paid out of the new loan. It would thus seem that the bank treated the transaction not as a renewal, but as a new discount. Each successive discount was a new loan, constituting a new indebtedness, wholly separate and distinct from the former. The money thus obtained was passed to the credit of Taylor, and he was charged with the amount of his note, and it was canceled and surrendered up to him. It further appeared in evidence that the last note for $4,711 was signed by Taylor's wife as well as by Taylor, so that in no proper sense could it be deemed a renewal of Taylor's note. If after the giving of the original note, the note or notes subsequently taken had been intended only as collateral security to the first, the first note would naturally have been retained by the bank. Besides, when the last note for $4,711 was taken, the bank seemed to have required an additional name as a condition to the making of the loan.

The law is well settled that where the debtor's own negotiable note is taken for a pre-existing debt, it is *prima facie* evidence of payment. 2 Greenleaf's Ev. §§ 519, 520; Smalley v. Edey, 19 Ill. 211; Cornwall v. Gould, 4 Pick. 444; Barclay v. Gooch, 2 Esp. R. 531; Thatcher v. Densmore, 5 Mass. 299; Huse v. Alexander, 2 Metc. 157. And where such a note is taken by the creditor for an antecedent debt, it will be presumed to have been taken in satisfaction of it, unless it be shown to have been intended as collateral security. *A fortiori*, the taking of a new note with an additional indorser, would be presumed to have been taken in payment and satisfaction of the original note. In the case of Huse v. Alexander, already cited, the Supreme Court of Massachusetts say:

"The giving of a new negotiable note for a debt due on simple contract, raises a legal presumption that the note was received in payment, and will operate as a discharge of the simple contract, unless the presumption be controlled by evi-

dence of a contrary intent. And it would seem very clear that the taking of new negotiable notes in a new form, payable at a period beyond the time of the maturity of the previous notes; and especially taking them secured by the introduction of a new indorser whose name was not on any of the original notes, accompanied with the further fact of the cancelling of the original notes, would fully authorize the presumption that the new notes were received in payment and discharge of the balance due on the former notes, unless the presumption be rebutted by other evidence."

But treating the giving of the subsequent notes as strictly a renewal of the original one, the presumption that it was intended as a payment, equally obtains.

In Parsons on Bills and Notes, Vol. 2, p. 203, it is said:

" The general custom and understanding of the mercantile world seem to demand that a new note, given in renewal of an old one which is taken up, as it is termed, should pay and cancel the old note for which it is given. The banks consider this to be the effect of a renewal, even though the old notes are left with the bank, as is frequently done. The old note would be canceled if it were paid in money, though the same money were immediately loaned to the debtor who just paid it in. There seems to be no necessity for paying down coin which is to be taken away again; yet renewals amount to this in the understanding of the parties, and we should think the courts ought to regard this universal understanding in arriving at the intention of the parties."

In White v. Jones, 38 Ill. 159, the court says: " It is not the law that an express agreement must be shown to satisfy the judgment before the note could so operate. Nor will the law presume, in the absence of such an agreement, that it was intended only as additional security; but when it is taken for an antecedent debt, it will be presumed to have been a satisfaction, unless it is shown to have been intended as additional security. *    *    *    If it appeared that the note was given for the account, the presumption would be that it was intended as a settlement and satisfaction of the antecedent demands."

It is to be observed that all the paper which went to make

Fridley v. Bowen.

up Taylor's indebtedness of $17,000 to the bank at the date of the note and mortgage in question, was surrendered and canceled from time to time upon the giving of other paper in its place. *Prima facie*, then, the giving of the subsequent notes and drafts was a payment of the antecedent ones. The presumption of payment is, however, liable to be rebutted by proof of a contrary intention; but the burden of proof was on the complainant to rebut this presumption by satisfactory proof that the giving of the subsequent notes and drafts was intended only as additional security, and not as payment. This proof we think they failed to make. The testimony of Bowen and Taylor tends rather to confirm than to rebut the presumption of payment. All that is made certain from their evidence is that the $4,000 note given in December, 1874, was surrendered to Taylor and canceled, and that finally, in July, 1876, a year and a half subsequently, a note for $4,711 was given by Taylor and his wife, which Bowen swears represented the entire indebtedness originally evidenced by the first note. There is nothing to show that the parties intended the last note other than as a payment of the first—or the one it was given to take up. It is true, Taylor swears that the $4,000 note was not paid, but this evidently was only his inference drawn from his construction of the facts. He does not deny that it was surrendered up and canceled, nor that the note for $4,711, which Bowen says represents the indebtedness evidenced by the original note for $4,000, was executed by himself and his wife. Doubtless all he meant to say was that it was not paid out of any other moneys than such as were realized out of discounts subsequently made by the bank; thus rendering his testimony only his own conclusion, and not the statement of a fact.

As to the drafts of the Coal and Iron Company upon the railroad companies, which constitute the fourth, fifth and sixth items of the original indebtedness of $17,000, it appears that the custom of the Coal and Iron Company was to make monthly estimates of the amounts to be furnished to the respective roads, and to draw in advance for the amounts thus estimated. These drafts were endorsed by Taylor and discounted by the bank, thus placing the company in funds to pay its laborers. The

bank continued making discounts of this paper down to July, 1876, a period of sixteen months subsequent to the giving of the ten thousand dollar note and mortgage. It would sometimes happen that the estimated amount was larger than the amount actually supplied, and the drafts were correspondingly too large. In that event, the railroad companies would honor the drafts to the extent of the coal actually received, for which amount the Coal and Iron Company would be credited, and the balance would be represented in new drafts, to be satisfied out of the proceeds of future deliveries of coal to the railroad companies, the old drafts being given up and canceled. This course of dealing was continued until July, 1876. Drafts were paid in whole or in part, and surrendered to the Coal Company, new ones were given from month to month, amounting in the aggregate during the year to a very large sum, and many times greater than the three drafts constituting the fourth, fifth and sixth items of the $17,000 indebtedness. While the testimony of Bowen in detailing these transactions is more or less confused and obscure, it leads irresistibly to the conclusion that out of the proceeds of these successive drafts any balance due on former ones was settled, and that the original drafts were satisfied and extinguished.

If the views we have expressed be correct, it follows that the note for $10,000, secured by the mortgage, had been fully paid before the filing of the bill, even if the $4,000 note be excluded from the computation, and that the court below erred in decreeing that there was anything due thereon.

The note and mortgage were given as security for $10,000 of the $17,000, or ten-seventeenths of Taylor's indebtedness to the bank; and when that proportion of the indebtedness was paid, the mortgage was satisfied. To hold, as claimed by appellees, that the mortgage was not satisfied, so long as any portion of the $17,000 indebtedness remained unpaid, would be tantamount to holding that the mortgage was security for the entire amount of the indebtedness, contrary to the express provisions of the instrument itself.

It is urged by the complainants that, inasmuch as the defendant did not set up in his answer, as a specific ground of

defense, that the note had been paid, he cannot defeat the right to a decree of foreclosure by evidence of payment.   The bill alleges that a certain amount was due and unpaid on the note at the time of the commencement of the foreclosure proceedings.   Without such an allegation, the bill would have been demurrable, for want of equity.   The answer contains a general traverse of all the allegations in the bill not otherwise specifically answered.   This put in issue every material fact which the complainant was required to prove in order to make out his case, except such facts as were admitted in the answer. It was an indispensable prerequisite to the complainant's right of recovery that they should make proof of the indebtedness secured by their mortgage; and the circumstance that the defendant had, in addition to his general denial, set up specific grounds of defense, did not relieve the complainants from the necessity of making proof of the mortgage debt.   What the complainant is required to prove, the defendant may disprove. Stafford v. Brown, 4 Paige, 90; DeWolf v. Long, 2 Gil. 679; Trenchard v. Warner, 18 Ill. 142; Dooley v. Stipp, 26 Ill. 89.

For the reasons hereinabove stated, the decree of the court below is reversed and the cause remanded.

Reversed and remanded.